U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 25 2014

CLERK, U.S. DISTRICT COURT
By_____
    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHARLES CALVIN BLACKWELL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:13-CV-258-A |
| | § | (Consolidated with |
| WILLIAM STEPHENS, Director, | § | No. 4:13-CV-259-A) |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Charles Calvin Blackwell, a state prisoner currently incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against William Stephens, Director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. Procedural History

On July 20, 2010, in the 355th District Court of Hood County, Texas, Case No. CR11350, a jury found petitioner guilty of two counts of possession of a controlled substance,

methamphetamine, of more than four grams but less than two-hundred grams with intent to deliver and one count of possession of a controlled substance, cocaine, of more than one gram but less than four grams and assessed his punishment at 99-years imprisonment and a $10,000 fine on each count of possession with intent to deliver and 2-years' imprisonment on the possession count. Clerk's R. 8-18, 33-36, 39-46, ECF No. 12-9. The Second Court of Appeals of Texas affirmed the trial court's judgments, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. Mem. Op. 41-60, *Ex parte Blackwell*, No. WP-78,827-01, ECF No. 12-5; *Blackwell v. State*, PDR No. 1171-11. Petitioner challenged the two possession-with-intent-to-deliver convictions, which are the subject of his federal habeas petitions, in state habeas applications, one for each conviction, and the Texas Court of Criminal Appeals denied the applications without a hearing, factual findings, or written order. Cover, *Ex parte Blackwell*, Nos. WR-78,827-01 & -02, ECF Nos. 15-17.

The state appellate court set forth the facts of the case as follows:

> Roland Smith, an investigator for the Hood County Sheriff's Office, testified that he knew appellant by the name of Charlie. On April 17, 2009, Investigator

2

Smith met with a confidential informant and wired him with a communication device that transmitted audio and video. According to Investigator Smith, the confidential informant contacted appellant to arrange to buy drugs from him. Before the confidential informant went to meet appellant, Investigator Smith searched him and his car to make sure there were no illegal narcotics with him. He gave the informant money to buy the drugs; officers had photocopied the money. Investigator Smith also followed the informant to where he was meeting appellant.

Investigator Smith identified State's Exhibit 1 as a digital reproduction of the recording of the transaction between the confidential informant and appellant; the trial court admitted the recording. Investigator Smith testified that he observed the buy, which took place in the informant's car, from a clandestine location, but he saw "what was taking place at the time it was taking place." He saw appellant hand something to the informant. The State played the recording for the jury.

The informant is first shown on the tape talking to the investigator and another person about the planned buy. The investigator gives the informant $400 and tells him to use it all for ice if he has to. Although the informant's face cannot be seen, his cell phone can be seen as if he is holding it in front of him. On the audio, the informant can be heard making a phone call to Charlie. The person on the other end of the line says he has some coke. The two also discuss the purchase of methamphetamine; the man on the phone says he can get more ice.

Once the informant arrives at the meeting place, the recording does not show the face of the person the informant is meeting; the informant stays in the driver's side of his vehicle with the window rolled down. He talks with the man through the open window on the driver's side and the two discuss money. The informant says he is giving the man all $400; $90 for some cocaine and methamphetamine, and $300 for more

3

methamphetamine to be delivered later. The informant tells the man to pay him back his $10 change for the cocaine and initial methamphetamine that the man already has. The informant can be seen handing money out the driver's side window. After the informant drives away, he can be heard calling Charlie and telling him to apply the extra $10 toward the methamphetamine that is to be delivered later.

Investigator Smith identified appellant as the man from whom the informant bought the drugs. Investigator Smith testified that after the buy, the informant brought packages of methamphetamine and cocaine back and explained that he gave Charlie the rest of the money for more ice. Investigator Smith testified that upon obtaining the drugs,

> We take them back to the sheriff's office, and we go into our evidence room where we weigh them, we them [sic] in a bag, seal it, put an evidence tag on it, and then we put it in a locker and for the evidence clerk to pick up at a later date.
>
> . . .
>
> . . . The tag's got the case number, the date, the charge, and then my name on it, my-your signature will go on the . . . tag, it goes on the evidence.

According to Smith, that same procedure was used in this case. Police logged four bags of drugs, three of which were methamphetamine and one of which was cocaine. The State admitted exhibit 31, which was the form used to submit the drugs to the lab for testing.

After watching the recording, Investigator Smith prepared an arrest warrant for appellant. Investigator Smith waited to serve the warrant, however, until appellant had re-upped his supply of drugs. The sheriff's office had received information that appellant would be transporting more drugs on May 14,

4

2009; they pulled appellant over in a traffic stop that day in Hood County. The stop was recorded by a device in Investigator Smith's vehicle; the recording of the stop was admitted as State's Exhibit 2. According to Investigator Smith, appellant seemed "wired up" when he pulled him over.

Appellant asked the officers to allow his brother to pick up his truck, but officers ran a K-9 sniff on the truck, and the dog alerted to the presence of narcotics. Under the hood of the truck, officers found a meth pipe in a sock. Rolled inside the tube of the receiver hitch, officers found a plastic baggie of what they believed to be marijuana. They also found nine bags of a substance that field-tested positive as methamphetamine. They logged everything they found into evidence according to the procedure Investigator Smith testified to previously. The recording of the stop was played for the jury. Investigator Smith testified that the total amount of methamphetamine in the nine bags seized from the truck was 11.2 grams, based on the report that he had signed and that the sheriff's office had submitted to the DPS lab when it sent the samples to be tested. The marijuana was 13.6 grams. Investigators Smith and Clark also seized $492.33 in cash from the truck.

After seizing the narcotics from the truck, the investigators took them back to the sheriff's office and logged them into evidence. Investigator Smith testified that all narcotics are individually packaged in a "seal-a-meal type thing" and then put in a larger, heavier bag, which is then sealed. An evidence tag is put on the bag with the case number, the offense, and the investigator's signature. Also, the investigator fills out an evidence submittal form, keeps a copy for the report, and the original goes with the evidence for the evidence clerk to use when later sending the bags to DPS for testing. The evidence is put in a locker and the number of the locker is recorded on the evidence form. Here, the bags were sent to DPS for testing; they were placed in a larger bag but not opened until the lab opened them for testing.

5

Regarding appellant's possible intent to deliver the drugs found in the truck on May 14, 2009, Investigator Smith testified that such evidence was from the separate packaging, i.e., the meth was "broken down into little packages for sale." He agreed the small packages were in relatively uniform amounts. They also took into consideration the cash on appellant when they found him. During the stop, Investigator Clark answered appellant's cell phone when it rang and pretended to be appellant. The sheriff's office also took Investigator Clark's conversation into account in deciding whether to charge appellant with intent to deliver.

On cross-examination, defense counsel asked Investigator Smith who the confidential informant was, and Investigator Smith identified him as Michael Eubanks. Investigator Smith had arrested Eubanks in a prior case; Eubanks was "working off" that charge by buying drugs from appellant. According to Investigator Smith, Eubanks brought him back the drugs that he had bought from appellant, but he did not bring back any of the money. When asked whether Eubanks bought $90 worth of drugs and only brought back the drugs, Investigator Smith said, "Okay" and then, "That's correct." One of the bags of drugs had a tear in the seam. On the tape of the buy, Eubanks tells Investigator Smith about the tear and says appellant had told him about it during the buy. The tipster who told Investigator Smith that appellant was re-upping on May 14, 2009 was also Eubanks. When officers pulled appellant over on May 14, 2009, he had a passenger named Bobby Underhill in the truck with him. Investigator Smith admitted he did not hear Investigator Clark's conversation with whomever had called appellant's cell phone.

On redirect, the prosecutor asked, "Now, do normal persons who carry cell phones get calls on the phone asking for $20 bags of methamphetamine?" Appellant's counsel objected, stating that Investigator Smith had already admitted that he had no knowledge of the conversation. The trial court overruled the objection, and Investigator Smith answered, "Normally, they

6

don't." William Todsen, a forensic scientist with the Department of Public Safety Crime Laboratory in Abilene, testified that he analyzed the evidence from both the buy and the stop. He identified the bags that he had analyzed, testifying that he unsealed them for purposes of testing and that he resealed them when he was finished. They did not appear to have been tampered with since that time. The bags were sealed when he got them. As for the drugs from the buy, the methamphetamine weighed a total of 2.13 grams, and the cocaine weighed less than one gram.

The methamphetamine seized from the truck weighed 6.01 grams, and the marijuana weighed .42 ounces. Although Todsen did not testify to the weights of the methamphetamine in each individual bag, he testified that they were the same as in the lab report he had prepared, which the trial court admitted into evidence. Todsen testified that he weighed the bags separately, then took out whatever substance was inside and weighed just the bag; that way, he could determine the net weight of the substance itself.

William Watt, a sergeant with the Hood County's Sheriff's Department, testified that Investigators Smith and Clark called him to transport appellant to jail after arresting him on May 14. Through Sergeant Watt, the State introduced a DVD recording of the arrest on May 14.

Investigator Clark testified that he was the handler for Laws, the canine who alerted on appellant's truck. According to Investigator Clark, Laws alerted to the passenger side of the truck. Investigator Clark agreed that they seized $492.33 from appellant. He said he checked the truck's toolbox, but all he found was an X-Box that Underhill said belonged to him. He and Investigator Smith photographed the items they found in the truck. After they were finished, they took the evidence to the sheriff's office where Investigator Smith placed it into evidence, and Investigator Clark interviewed appellant and gave him his *Miranda* warnings. The interview was recorded and

7

published to the jury. Investigator Clark also testified that he thought appellant was under the influence of methamphetamine at the time of the stop.

Investigator Clark testified without objection that the phone call he took on appellant's cell phone was from Tom who said he needed "a 20," which Investigator Clark understood to mean $20 of methamphetamine. He asked where Tom was, and the man said his aunt's house on Brierwood. Investigator Clark said he would be there shortly and hung up, but he never went to the street Tom gave him because he was interviewing appellant. When Investigator Clark interviewed appellant, he asked if he knew someone named "Tom," and appellant answered, "You mean Tom over on Brierwood?" Appellant tried to tell Investigator Clark that he had just bought the truck that day, but Investigator Clark had pulled appellant over in the same truck "probably a couple of weeks before."

On cross-examination, appellant's counsel asked if Investigator Clark knew what number Tom had been trying to call or whether he had tried to call Tom back to verify whom he had been trying to call. He asked what exactly Tom had said; Investigator Clark answered that he could not recall specifically but that "he had called and asked for Charlie, for Mr. Blackwell, and stated he wanted a $20 bag of methamphetamine." Investigator Clark denied that Tom had spoken in "code" or that people who called asking for drugs commonly asked for them in code. When asked if he stated the conversation differently in his report from May 14, 2009, Investigator Clark said,

> That's what I put in my report, is what was said. Okay? I said I didn't remember obviously every detail, you know, that—that—of the conversation, but the basic terminology that was used to obviously to show that Mr. Blackwell was selling drugs was what was put in the report.

Upon questioning by defense counsel, Investigator

8

> Clark admitted that proof that appellant was selling drugs was important to both him and Investigator Smith. In his closing argument, appellant's counsel urged the jury to find that appellant had been framed by Eubanks, who manipulated the buy and later put the drugs in appellant's truck. He also argued that Eubanks had borrowed Tom's phone and called, pretending to be Tom so that he could set up appellant. Investigator Clark testified that he did not know Eubanks before the buy.

Mem. Op. 42-51, *Ex parte Blackwell,* No. WR-78,827-01, ECF No. 12-15.

## II. Issues

Petitioner raises five grounds for habeas relief, wherein he claims that he received ineffective assistance of trial counsel (grounds one through four) and that his right to confrontation was violated under *Crawford v. Washington*, 541 U.S. 36 (2004), (ground five). Pet. 6-7 & Pet'r's Mem. 5, ECF No. 1.

## III. Rule 5 Statement

Respondent believes that the petition is neither successive nor untimely under the federal statute of limitations and that the claims have been properly exhausted with respect to grounds one through four. He believes however that ground five is procedurally barred. Resp't's Answer 11, 14-16, ECF No. 15; 28 U.S.C. § 2244(b), (d).

## IV. Procedural Default

In his fifth ground, petitioner asserts his right to

9

confrontation was violated because Investigators Clark and Smith testified, without objection, to statements made by informants Michael Eubanks and "Tom," but neither witness was called to testify at trial. Petitioner raised the claim on direct appeal, but the appellate court found that because petitioner did not object to the evidence on *Crawford* or Confrontation-Clause grounds at trial, he had failed to preserve error. Mem. Op. 55-56, *Ex parte Blackwell*, No. WR-78,827-01, ECF No. 12-5.

In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Supreme Court held that, absent a showing of "cause" and "prejudice," federal habeas review is barred if the petitioner fails to comply with a state contemporaneous objection rule at trial. Petitioner asserts that the state procedural default was the result of the ineffectiveness of trial counsel and that the claim was addressed by the Texas Court of Criminal Appeals because the state court's denial of habeas relief, versus a dismissal, signifies an adjudication on the merits. Pet'r's Reply 12, ECF No. 16. Although this is generally true, [a] state court's unexplained denial of a habeas petition raising federal claims is not sufficient, for purposes of federal review, to lift a procedural bar imposed on direct appeal." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). "When faced with a silent or ambiguous state habeas

decision, the federal court should 'look through' to the last clear state decision on the matter" to determine whether the decision is an adjudication on the merits or procedural. *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999). The state appellate court explicitly overruled the claim on procedural grounds. Thus, "where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst*, 501 U.S. at 803. Further, because the court holds below that petitioner's trial counsel was not constitutionally ineffective, the court finds no cause and/or prejudice resulting from counsel's failure to object to the testimony and is therefore precluded from addressing the claim. *See Murray v. Carrier*, 477 U.S. 478, 486-92 (1977).

## V. Discussion

### Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11

12

(5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits.[1] *Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. Const. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have

---

[1] As previously noted, an exception to this rule occurs when "the last reasoned opinion on the claim explicitly imposes a procedural default." *Ylst*, 501 U.S. at 803.

13

been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

Further, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Finally, in the absence of a written opinion or express findings of fact, this court assumes the state courts applied the *Strickland* standard and made factual findings consistent with the state courts' decision. The Supreme Court recently emphasized in *Harrington v. Richter* the way that a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law

14

> is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

131 S. Ct. 770, 785 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Accordingly, it is necessary only to determine whether the state courts' rejection of petitioner's ineffective assistance claim was contrary to or an objectively unreasonable application of *Strickland*. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke*, 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

Under his first ground, petitioner claims trial counsel rendered ineffective assistance because counsel failed to request a "cautionary" jury instruction on informant witness corroboration under article 38.141 of the Texas Code of Criminal Procedure. Pet. 6 & Pet'r's Mem. 11-12, ECF No. 1. Article 38.141 provides, in relevant part:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

Tex. Code Crim. Proc. Ann. art. 38.141(a) (West 2005).

The state appellate court addressed the issue as follows:

15

> The plain language of the statute provides that a licensed peace officer's testimony does not need to be corroborated. Here, Eubanks did not testify; only Investigators Smith and Clark testified. Accordingly, article 38.141 does not apply, and no additional corroboration was required. . . .

Mem. Op. 55, *Ex parte Blackwell*, No. WR-78,827-01, ECF No. 12-15 (citations omitted).

Deferring to the state courts' interpretation of state law, the state courts' rejection of petitioner's claim is neither erroneous nor objectively unreasonable. Counsel is not required to make frivolous motions or objections. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir.2002); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990).

Under his remaining three grounds, petitioner claims counsel rendered ineffective assistance by failing to object to a Confrontation Clause violation and the admission of hearsay testimony and by eliciting damaging and inadmissible hearsay. Pet. 6-7 & Pet'r's Mem. 12-14. Specifically, he complains of the investigators' testimony regarding informants Eubanks's and Tom's out-of-court statements to them. Pet. 7, Pet'r's Mem. 13-14, ECF No. 1. Applying the *Strickland* standard, the state appellate court addressed the issue as follows:

> Appellant's complaint is that trial counsel failed to appreciate the hearsay issue regarding the

16

>    confidential informant. However, as we have explained, Eubanks did not testify, and counsel may have had a reasonable strategy for not objecting at trial to Investigator Smith's testimony that Eubanks called him and said appellant had re-upped, giving officers the information they wanted to pull appellant over the second time. Specifically, trial counsel argued in his closing that Eubanks framed appellant.
>
>    Moreover, although appellant complains that his counsel failed to object to evidence regarding the phone call from Tom, and additionally elicited "damaging" hearsay about what "Tom" said on the phone, counsel apparently employed that call as part of his strategy of claiming that Eubanks framed appellant. In his closing, counsel suggested that Eubanks had called on appellant's cell phone, pretending to be Tom. Also, in questioning Investigator Clark about what exactly Tom had said, counsel showed that Investigator Clark's memory of the call was not very detailed and that no follow-up investigation was done to determine that a man named Tom on Brierwood was indeed the person whom Investigator Clark had talked with.
>
>    . . .
>
>    The right to effective assistance does not guarantee errorless counsel but rather objectively reasonable representation. We will not second-guess trial counsel's apparent strategy of arguing that the evidence as admitted was equally consistent with appellant's being framed by Eubanks, especially with a record that is silent on counsel's reasons.

Mem. Op. 58-60, *Ex parte Blackwell*, No. WR-78,827, ECF No. 12-15

(footnote and citations omitted).

A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct is strategically

17

motivated, and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir.1985). In fact, as noted by the state court, even where a record is utterly silent with regard to strategy, a reviewing court will presume counsel's action or inaction to be the product of strategy, except in extremely unusual circumstances not present in this case. *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983); *Stanley v. Zant*, 697 F.2d 955 (11th Cir.1983). Certainly counsel's decision not to object to the testimony, which was consistent with his theory of defense, was strategy and not a deficiency.

Petitioner has presented no factual or legal basis in this federal habeas action that could lead the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d); *Strickland*, 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or objections).

18

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED July 25, 2014.

/s/ John McBryde
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE